IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| JEREMY POCHAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiff,<br><br>vs.<br><br>UHG I LLC, JOINTLY AND SEVERALLY; AND  WELTMAN WEINBERG & REIS CO LPA, JOINTLY AND SEVERALLY;<br><br>Defendants, | 2:23-CV-01138-MJH |

OPINION

Plaintiff, Jeremy Pochan, brings this putative class action against Defendants, UHG I, LLC  ("UGH") and Weltman, Weinberg & Reis Co., LPA ("WWR"), under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4, et seq. ("PFCEUA"), the Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-2, et seq. (UTPCPL), and under Pennsylvania common law theories of negligence and invasion of privacy.   Defendant, WWR, moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 10), and Defendant, UHG, moves to join in WWR's Motion (ECF No. 12).   Defendants' Motion to Dismiss is now ripe for disposition.

Upon consideration of WWR and UHG's Motion to Dismiss (ECF No. 10), the respective briefs (ECF Nos. 11, 20, and 25), and for following reasons, Defendants' Motion to Dismiss will be granted.

I.   Introduction

Mr. Pochan's counsel and/or his firm comes to federal court a second time against WWR under dubious and illogical legal theories for relief for alleged unfair debt collection practices.

And, just as the court in *Berger v. Weltman, Weinberg & Reis, LPA*, 2021 WL 4552155 (M.D. Pa. Oct. 5, 2021) rejected said theories, this Court will also resoundingly dismiss Mr. Pochan's claims.

"Congress enacted the FDCPA in 1977 after noting the 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(a)). However, as at least one jurist has noted, "I do not believe that laudable goal and the FDCPA's strict liability standard should be transformed into a vehicle for 'gotcha' litigation." *D'Avanzo v. Glob. Credit & Collection Corp.*, 10-CV-01572-RPM-CBS, 2011 WL 2297697, at *5 (D. Colo. Apr. 18, 2011), report and recommendation adopted, 10-CV-01572-RPM-CBS, 2011 WL 2292190 (D. Colo. June 9, 2011).

Although the FDCPA has no doubt helped to cut back on unfair and deceptive debt collection tactics, it has also, at times, been abused. *See In re FDCPA Mailing Vendor Cases*, 551 F.Supp.3d 57, 59 (E.D.N.Y. 2021) ("Legions of FDCPA cases that have little to do with the purposes of the statute have appeared on this Court's docket."). FDCPA cases "are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate." *Id.* Indeed, FDCPA litigation has turned "into a glorified game of 'gotcha,' with a cottage industry of plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent." *Id.* at 61.

As the Court will explain below, Mr. Pochan's claims are devolved from the FDCPA's goals and devoid of a gravitas.

II.     Background

Mr. Pochan alleges that, on February 21, 2023, UGH through its counsel WWR, filed a Complaint against Mr. Pochan in the Allegheny County Court of Common Pleas ("state court complaint").[1] (ECF No. 5 at ¶ 17).  Mr. Pochan avers that the state court complaint disclosed his private financial information and that Defendants failed to properly utilize a confidential document form necessary to shield said disclosure.  *Id*. at ¶¶ 18-19.   Specifically, Mr. Pochan asserts that Defendants attached exhibits that identify him as a debtor, and that said exhibits did not comply with *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* ("UJS Policy") (204 Pa. Code § 213.81).  *Id*. at ¶¶ 22 and 25.

Plaintiff alleges that the "exhibit attached to the Amended Complaint filed in the Court of Common Pleas of Allegheny County case contain a Borrower Agreement attributing the accrual of an alleged debt to Plaintiff." *Id*. at ¶ 30. Thus, Plaintiff alleges that the "exhibits attached to the complaint qualify as loan application documents necessitating the inclusion of a Confidential Document Form." *Id*. at ¶ 31. According to Plaintiff, "by failing to prevent disclosure of these statutorily protected materials, Weltman, Weinberg & Reis failed to comply with 204 Pa. Code 213.81." *Id.* at ¶ 71.

In its Motion to Dismiss, WWR argues that 1) this Court should reject Plaintiff's counsel's second attempt to manufacture liability; 2) WWR complied with both Pennsylvania Law and the FDCPA; 3) Non-Adherence to a court rule does not automatically give rise to an

---

[1] In evaluating a motion to dismiss, a court may consider "documents that are attached to or submitted with the complaint," and any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed.2004)).

FDCPA violation; 4) Without an FDCPA violation, Mr. Pochan cannot sustain an PFECUA or UTPCPL claim;  5) Mr. Pochan cannot support a negligence claim against WWR; and 6) Mr. Pochan cannot support an invasion of privacy claim.

III.     Relevant Standard

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016)

4

("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989). When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

    IV.    Discussion

        A.  FDCPA Claim

WWR contends that this Court should reject Mr. Pochan's counsel's second attempt to manufacture liability under the FDCPA, for an alleged failure to adhere to the UJS Policy. WWR

further argues that it complied with both Pennsylvania law and the FDCPA and that non-adherence to a court rule does not automatically give rise to an FDCPA violation.

Mr. Pochan first maintains that *Berger* is distinguishable because, unlike *Berger*, Defendants here disclosed financial account numbers. Mr. Pochan also contends that the loan agreement, Truth in Lending Disclosure, and account numbers attached to the state court complaint constitute a disclosure of confidential "financial source documentation" under the UJS Policy (204 Pa. Code § 213.81).  Mr. Pochan argues that said disclosures violate the FDCPA because it identifies him as a defendant in a debt collection action.  Mr. Pochan avers that Defendants violated the following FDCPA provisions:

- Section 1692f, by filing debt collection lawsuits against consumers and disclosing confidential financial source documents on public dockets capable of identifying said consumers as alleged debtors and availing Plaintiff to identity theft.

- Section 1692e(10), by falsely certifying compliance with the Public Access Policy of the Unified Judicial System of Pennsylvania that requires counsel to file confidential information differently than non-confidential information.

- Section 1692d, by "engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

In reply, WWR maintains that the supporting documents attached to the state court complaint are not "Financial Source Documents."  WWR further contends that, despite Mr.

Pochan's failure to plead alleged disclosures of "account numbers," Mr. Pochan is aware that these are defendant's internal reference numbers and not "account numbers."

To state a cause of action of action under the FDCPA, a plaintiff must allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).   The key to Mr. Pochan's FDCPA claim derives from whether an alleged UJS Policy violation satisfies the fourth element, *supra*.

The UJS Policy provides in relevant part as follows:

**Section 7.0. Confidential Information.**

A.   The following information is confidential and shall not be included in any document filed with a court or custodian, except on a Confidential Information Form filed contemporaneously with the document:

\*\*\*

2. **Financial** Account Numbers, except an active **financial** account number may be identified by the last four digits when the **financial** account is the subject of the case and cannot otherwise be identified

\*\*\*

**Section 8.0. Confidential Documents.**

A.   The following documents are confidential and shall be filed with a court or custodian under a cover sheet designated "Confidential Document Form":

1. Financial Source Documents

204 Pa.Code § 213.81(Sections 7.0 (A)(2) and 8.0(A)(1)).  The UJS Policy defines "Financial Account Numbers" and "Financial Source Documents" as follows:

I.   "Financial Account Numbers" include financial institution account numbers, debit and credit card numbers, and methods of authentication used to secure accounts such as personal identification numbers, usernames and passwords.

7

      J.      "Financial Source Documents" are:

      1. Tax returns and schedules;

      2. W-2 forms and schedules including 1099 forms or similar documents;

      3. Wage stubs, earning statements, or other similar documents;

      4. Credit card statements;

      5. Financial institution statements:

      6. Check registers;

      7. Checks or equivalent; and

      8. Loan application documents.

204 Pa.Code § 213.81(Section 1.0(I)-(J)).

      Under nearly identical circumstances in *Berger*, the court concluded that plaintiffs' FDCPA claims rested on three mistaken premises:

    1) the Contract is a "loan application document[ ]" as defined in § 231.81;

    2) violations of § 231.81 can per se give rise to FDCPA violations; and

    3) Defendant's filing of an unredacted copy of the Contract in connection with [its] state court action constituted the "disclosure of confidential information capable of identifying [Plaintiff] as an alleged debtor" in violation of the FDCPA.

*Berger*, 2021 WL 4552155, at *3.

      As regards the first premise, *Berger* held that a loan agreement or contract is not a "loan application document" that would trigger the UJS Policy. *Id*.  Further, *Berger* explained that, because the subject documents were not "loan application documents," the defense attorney's certificate of compliance under the UJS Policy could neither be false nor misleading under the FDCPA.  *Id*.

8

As regards the second premise, *Berger* held that noncompliance of a state procedural requirement cannot independently give rise to a FDCPA violation. *Id.* (citing *See Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 270 (3d Cir. 2013) (noting that the issue of whether subpoenas failed to comply with a procedural rule is a preliminary inquiry that must be followed by an inquiry as to "whether the alleged failures to comply also violated" FDCPA provisions) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010)) (rejecting the notion that "all debt collector actions in violation of state law constitute per se violations of the FDCPA," holding instead that the conduct or communication at issue must also violate a relevant FDCPA provision).

*Berger*'s conclusion is far from an aberration. In *Skibbe v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr.*, 309 F.Supp.3d 569, 576 (N.D. Ill. 2018), the court noted that, "[d]isputes over the application of state procedural rules should be resolved in its proper forum—the state court." *Id*. The Seventh Circuit has made clear that it will not "transform the FDCPA into an enforcement mechanism for matters governed by state law." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 876 (7th Cir. 2015) (rejecting claim that filing a summary judgment motion containing inaccuracies in state court violated the FDCPA).

Pennsylvania's sister state, New Jersey, adopted a similar rules scheme in its treatment of publicly filed documents, and in particular, for judgment debtors. N.J. Ct. R. 1:38. In evaluating this scheme against the FDCPA, one court reasoned, "[a] violation of N.J. Ct. R. 1:38-7(d) is unlikely to equate to a violation of FDCPA, because that State Court rule was adopted for reasons having nothing to do with debt collection practices." *Diaz v. Midland Funding, LLC*, 2017 WL 4236060, at *7 (D.N.J. Sept. 22, 2017). Further, the court held:

> N.J. Ct. R. 1:38-7(d) itself does not provide a private right of action. It would be anomalous to hold that FDCPA makes a violation of this State Court Rule

9

> actionable, where the State itself has not done so. Nor is FDCPA properly viewed as the kind of statute that grafts a federal cause of action onto state-law violations. FDCPA describes the conduct it prohibits in numerous sections and subsections. See 15 U.S.C. §§ 1692e, 1692f. It is not an incorporation-by-reference statute that grants a right of action for violations of other provisions.

*Id*.

Likewise, Pennsylvania has no private right of action for a violation of the UJS Policy. Indeed, the UJS provides remedies for noncompliance in regards to Confidential Information and Confidential Documents as follows:

> **Section 7.0. Confidential Information.**
>
> \*\*\*
>
> F. If a filed document fails to comply with the requirements of this section, may, upon motion or its own initiative, with or without a hearing, order the filed document sealed, redacted, amended or any combination thereof. A **court of record** may impose sanctions, including costs necessary to prepare a compliant document for filing in accordance with applicable authority.
>
> \*\*\*
>
> **Section 8.0. Confidential Documents.**
>
> \*\*\*
>
> F. If confidential documents are not submitted with the Confidential Document Form, a **court of record** may, upon motion or its own initiative, with or without a hearing, order that any such documents be sealed. A court of record may also impose appropriate sanctions for failing to comply with this section.

204 Pa.Code § 213.81(Sections 7.0(F) and 8.0(F)) (emphasis added). The UJS Policy defines "court of Record" includes "the Supreme Court, Superior Court, Commonwealth Court, Courts of Common Pleas, and Philadelphia Municipal Court." 204 Pa.Code § 213.81 (Section 1.0(E)). Therefore, the exclusive remedy for noncompliance is set forth in the UJS Policy. Said remedies include sealing, redacting, amending, and/or sanctioning. These remedies also lie exclusively

10

with Pennsylvania state courts. Accordingly, a federal court has no power to remedy noncompliance with a UJS Policy.

As regards the third premise, *Berger* held that plaintiffs' reliance on *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) was misplaced. In *Douglass*, the Third Circuit held that that "disclosure of a consumer's account number on the face of a debt collector's envelope violates [FDCPA Section 1692(8)]." *Id*. at 300. However, *Berger* noted that "placing an individual's account number on the face of a debt collection-related envelope stands in stark contrast to the act of attaching a sales contract to a complaint pursuant to a state procedural requirement." 2021 WL 4552155, at *4. Namely, under Pennsylvania Rule of Civil Procedure 1019(i), "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof ..."

Here, the Court agrees with the sound reasoning in *Berger* and concludes that Mr. Pochan cannot maintain an FDCPA claim. First, a careful review reveals that the supporting documents to the state court complaint are not "Financial Source Documents" under the UJS Policy definitions that would require sealing, amendment, or redaction. None of the UJS Policy's enumerated proscribed documents or information appear within the state court complaint. Second, Mr. Pochan's claim, that his account numbers are compromised, is belied by the clear indication that the verification page clearly contains internal reference numbers, not his Lending Club account number, and where Mr. Pochan has failed to plead that said reference numbers contain any specific confidential information. Finally, even if the state court complaint had contained confidential information or confidential documents, Mr. Pochan's remedy would be exclusively within the state court jurisdiction under the UJS Policy. In the end, as explained above, the FDCPA statute is meant to protect against abusive practices; it does not concern

violations of state technical procedural rules within a legitimate civil debt collection complaint. Therefore, under these circumstances, Mr. Pochan cannot state a claim under the FDCPA against the defendants.

Accordingly, Defendants' Motion to Dismiss, as regards the FDCPA claim, will be granted.

B.  PFECUA and UTPCPL Claims

WWR argues that Mr. Pochan's PFECUA and UTPCPL claims are based entirely on the concept that WWR's conduct violated the FDCPA.  Therefore, WWR contends that, since there is no FDCPA violation, the state law claims must be dismissed as well.

Mr. Pochan's counsel has not separately briefed opposition to WWR's motion to dismiss, as regards the PFECUA and UTPCPL.  However, in support of his PFECUA and UTPCPL claims, Mr. Pochan's Amended Complaint avers as follows:

> 107. The [PFECUA] states that, for debt collectors, "It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a).
>
> 108. Defendants violated the FDCPA, and Plaintiff and Class A Members have suffered actual damages due to Defendants' actions […] and therefore violated the PFCEUA.
>
> 109. Plaintiff and Class A Members are "Persons" as defined by the UTPCPL. 73 P.S. § 201-2(2).
>
> 110. PFCEUA § 2270.5 (a) states, "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of . . . the Unfair Trade Practices and Consumer Protection Law."

(ECF No. 5 at ¶¶ 107-110).

The PFCEUA, Pennsylvania's analogue to the FDCPA, prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73

P.S. § 2270.2. The PFECUA states that, for debt collectors, "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a). FCEUA's enforcement provision reads: "If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]." 73 P.S. § 2270.5(a). The PFCEUA therefore does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL. *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015). As a private action under Section 201–9.2 of the UTPCPL, PFCEUA claims therefore must plead that a plaintiff suffered an ascertainable loss as a result of a defendant's *prohibited action*. *Id.* (emphasis added).

Here, the UTPCPL would be the only vehicle to recover for a "prohibited action" under the PFCEUA. The only PFCEUA prohibited actions pleaded by Mr. Pochan are violations of the FDCPA. And, because the Court, supra, has determined that Mr. Pochan cannot state a claim for violations of the FDCPA, his PFCEUA and UTPCPL claims will likewise fail.

Accordingly, Defendants' Motion to Dismiss, as regards the PFCEUA and UTPCPL claims, will be granted.

C.  Negligence Claim

WWR next argues that Mr. Pochan's negligence claim must be dismissed, because it owed no duty to Mr. Pochan; and even if it did, no duty was breached. Specifically, WWR maintains that it only owed a duty to its own client, not to Mr. Pochan, its client's adversary. Further, WWR contends that no breach occurred, because it never divulged Mr. Pochan's personal financial information.

Mr. Pochan maintains that Defendants had a common law duty to exercise reasonable care to protect and secure Mr. Pochan's personal and financial information within their possession or control from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. Mr. Pochan argues that Defendants breached said duty when the confidential information was published to the general public on the dockets.

To maintain a negligence claim, "the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575-76 (Pa. Super. Ct. 2006). "The sine qua non of a negligence action is a duty of care owed by defendant to plaintiff. 'It is a fundamental rule of tort law that a negligence claim must fail if it is based on circumstances for which the law imposes no duty of care on the defendant.'" *Gigli v. Palisades Collection*, L.L.C., 2008 WL 3853295, at *16 (M.D. Pa. 2008). Under Pennsylvania law, "the privity rule states that an attorney will be held liable for negligence only to his client, and not to anyone else." *Pelagatti v. Cohen*, 536 A.2d 1337, 1347 (Pa. Super. 1987), appeal denied, 548 A.2d 236 (Pa. 1988).

The distinguishing factor in this case is that the alleged offending information was set forth, first and foremost, when Defendants filed their state court complaint. Under Pennsylvania law, parties and their counsel are privileged with absolute judicial immunity from tort liability for communications made during the course of judicial proceedings. *Agresta v. Goode*, 797 F. Supp. 399, 405 (E.D. Pa. 1992); B*rown v. Delaware Valley Transplant Program*, 539 A.2d 1372, 1374 (Pa. Super. 1988). This privilege sweeps broadly to protect "[a]ll communications pertinent to any stage of a judicial proceeding including not only ... communications made in open court, but also ... pleadings and even less formal communications such as preliminary conferences and

14

correspondence between counsel in furtherance of the client's interest," *Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. Ct. 2012) (internal quotation marks and emphasis omitted). Although the judicial privilege most often bars defamation suits, Pennsylvania courts have applied the privilege broadly to confer "immunity from civil liability in the context of judicial proceedings." *Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950, 956-57 (Pa. Super. Ct. 1988).

Here, WWR, as the attorneys representing UHG, owed no duty of care to its non-client, Mr. Pochan. Further, even it did owe a duty, both WWR and UHG are entitled to judicial privilege from any liability arising from content of its pleadings, here, the state court complaint. Thus, even if the state court complaint contained confidential information, which this Court has already determined above that it did not, Mr. Pochan could not recover from Defendants under a negligence theory. Finally, any claims that internal reference numbers could be traced to any of his private information is tenuous and speculative, and Mr. Pochan's lack of supporting factual allegations indicating any actual breach has occurred calls into question his standing to bring such a claim. See, e.g., *McGowan v. Core Cashless, LLC*, 2:23-CV-00524-MJH, 2024 WL 488318, at *3 (W.D. Pa. Feb. 8, 2024) (holding "any alleged diminution in the value of personal information cannot establish an injury in fact where it has been determined that Plaintiff has failed to establish a substantial risk of harm because any alleged future harm remains speculative."). Therefore, Mr. Pochan cannot state a claim in support of a negligence claim in this context.

Accordingly, Defendants' Motion to Dimiss, as regards Mr. Pochan's negligence claim, will be granted.

D.  Invasion of Privacy

WWR argues that Mr. Pochan's invasion of privacy claim fails, because it is based upon the false premise that WWR has disclosed Mr. Pochan's Confidential Information, which was never disclosed.  WWR maintains that, if Mr. Pochan's theory were to be accepted, a potential invasion of privacy claim would arise every time a debt collector and/or its counsel attached contracts to complaints, in compliance with and as mandated under state procedural rules.  Although Mr. Pochan maintains that Defendants ignore the fact that the account numbers were listed on the verification page and filed on the public docket,  WWR responds that the "account numbers" are clearly internal reference numbers that would not fall under confidential information.

Invasion of privacy is a tort under Pennsylvania law, derived from § 652A of the Restatement (Second) of Torts. Specifically, "the publicity-given-to-private-life tort requires (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public." *Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa. Super. 1992), *citing Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, at 1384 (Pa. Super. 1984).  In *Strader v. U.S. Bank Nat'l Ass'n*, 2:17-CV-684, 2018 WL 741425 (W.D. Pa. Feb. 7, 2018), the court held that "[w]hile state law judicial proceedings privilege does not apply to alleged violations under the FDCPA, the privilege does apply to state law claims such as invasion of privacy." *Id* at * 19.  Thus, pleadings cannot support an invasion of privacy claim because "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."  *Id*. (quoting *Binder v. Triangle Publ'ns, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (Pa. 1971)).

Here, for the invasion of privacy claim, whether said numbers were reference numbers or account numbers is immaterial. Defendants, as regards Mr. Pochan's invasion of privacy claim, are entitled to judicial privilege when they included the numbers in their judicial pleadings. Therefore, Mr. Pochan cannot maintain an invasion of privacy claim against Defendants.

Accordingly, WWR's Motion to Dismiss, as regards Mr. Pochan's invasion of privacy claim, will be granted.

V.  CONCLUSION

Based upon the foregoing reasons, Mr. Pochan's lawsuit runs far afield from the merits and purpose of a FDCPA claim. Defendants' Motion to Dismiss will granted. The Court finds that any amendment would be futile, and Mr. Pochan's Amended Complaint will be dismissed. An appropriate order will follow.

DATED this 17th day of July, 2024.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge